### B. R. TOWNSEND AND ANOTHER v. GEORGE QUINAN.

1. In a petition to enjoin a judgment and to establish offsets against it, the petitioner alleged that the defendant (his judgment creditor) was "in "failing circumstances," and that petitioner had "acquired" the offsets before he received notice of an assignment of the judgment by the defendant to a third party, who intervened and claimed the benefit of the judgment. *Held,* that the petition did not disclose equities entitling the petitioner to the relief he prayed, and it was therefore error to overrule the defendant's motion to dissolve the preliminary injunction. The petition should have alleged the absolute insolvency of the defendant, and that petitioner had not merely "acquired," but had bought and paid for the offsets before he had notice of the assignment of the judgment. And even had these averments been made and proved, it seems that if the assignment was made in good faith and for a valuable consideration, and if no laches was imputable to the assignee, the offsets would not be available against the latter.

2. Though the stay laws enacted during the late civil war have been adjudged unconstitutional, yet no citizen should suffer prejudice by reason of his obedience to those laws while they were supposed to be valid.

APPEAL from Fort Bend.

The opinion of the court and the brief for the appellants are the only papers pertaining to this case which have come to the reporter's hands. The material facts, however, appear to be fully stated in the opinion.

*James B. Morris,* for the appellants, filed an able argument and brief on the facts and the law of the case.

No brief for the appellee.

WALKER, J. M. W. Townsend recovered a judgment for one thousand five hundred and sixty-eight dollars against Machin S. Stith, at the October term, 1859. An appeal was taken to the Supreme Court by Stith, who gave as securities on the appeal bond, George Quinan and Jackson Rust. The judg-

ment was affirmed against Stith and his securities at the Galveston term, 1864.

On the 20th day of December, of the same year, Stith died. It is claimed that on the 15th day of May, 1866, M. W. Townsend transferred the judgment to B. R. Townsend, the executor of the last will of N. Townsend, deceased, in settlement of a *bona fide* indebtedness. On the 4th day of May, 1868, an execution was issued by the clerk of the District Court of Wharton county, directed against the property of the sureties.

The return on the execution shows, that on the 7th day of July, 1868, the sheriff called on Quinan, who pointed out property on which the sheriff could levy his execution. On the 16th day of July, 1868, Quinan filed a petition for an injunction, praying that the sheriff might be restrained from further proceedings under the execution. The prayer was granted on petitioner giving bond in the sum of three thousand dollars.

The principal allegations in the petition on which the order of the court was sought and obtained are to this effect: That no execution had issued on the judgment for more than three years after its affirmance by the Supreme Court; and that none had ever issued against Stith, and there had been no suggestion of the death of Stith, or affidavit filed in the District Court, or cause shown why execution had not issued against Stith. The petitioner claimed, also, that M. W. Townsend was justly indebted to him in divers sums of money, as witnessed by two promissory notes, and upon an open account for goods sold to said Townsend by Henry Swift & Co., and that these claims had been regularly transferred to the petitioner, and he had applied to M. W. Townsend for the credit of these claims upon the Stith judgment, which Townsend had refused to allow; further, that Townsend was in failing circumstances, and that money could not be made against him on execution.

The prayer of the petition was to the effect that the execution might be quashed, and that the claims he held against Townsend might be credited on the Stith judgment, and for general relief.

On the 1st of December, 1868, the defendant, M. W. Townsend, moved to dissolve the injunction for want of equity in the bill, and the insufficiency of the bond.

On leave of the court, B. R. Townsend filed his petition as intervenor, on the 2d of December, 1868. He avers that he is the executor of the will of N. Townsend, duly appointed and qualified; that he had succeeded, by the assignment of July 15th, 1866, to all the rights and equities of M. W. Townsend in the judgment against Stith and his securities. He avers that this assignment was long previous to any counter claims coming into the hands of the petitioner, against M. W. Townsend; also, that the petitioner had hunted up said claims for a fraudulent purpose; that he was neither the legal nor equitable owner of them. This answer is in the nature of a cross-petition, and prays for judgment against Quinan and Rust.

On the same day, M. W. Townsend demurred to the plaintiff's petition, and answered disclaiming all interest in the Stith judgment, by reason of the assignment, and charges Quinan with a knowledge of the transfer before he had hunted up the claims referred to in his petition; and he also denies the ownership of the claims by Quinan.

On the 16th day of December, 1870, it appears from the record that the venue was changed to Fort Bend county. On the 17th day of March, 1871, the plaintiff amended his petition, denying any knowledge of the transfer of the Stith judgment at the time he acquired the claims against M. W. Townsend; but this amended petition fails to negative the allegations of the Townsends as to the ownership of the claims, nor does he allege what consideration, or any consideration indeed, he paid for them. He does not even say that he bought the claims, but uses the somewhat equivocal term "*acquired.*"

On the 20th of November, 1871, the intervenor amended his pleading, and demurred to the plaintiff's amendment. He alleges in his amended pleading the presentation of the Stith judgment, on the 26th day of April, 1867, to N. B. Floyd, the administrator of Stith's estate; its allowance and approval by

the county judge of Wharton county; and charges Quinan, as Floyd's attorney and confidential legal adviser, with a full knowledge of the presentation, allowance, and approval.

At the November term of the District Court for the year 1871, Quinan recovered a judgment for two thousand four hundred and twenty-nine dollars and five cents, which the court credited on the Stith judgment, ordering said judgment to remain in full force for that amount, for the use of Quinan. The court also set aside the execution and perpetuated the injunction.

Rust, Quinan's co-security, and Floyd, Stith's administrator, were made parties at the instance of the intervenor.

The court was asked to submit the following special issues:

"*First.* Is the account of six hundred and eleven dollars, "plead in offset, proven by legal evidence to be a valid and "just account?

"*Second.* Has the plaintiff, Quinan, established by proof that "he ever bought and paid for the claims which he claims as "offsets? If so, state when he became the real owner of them, "and how much he paid for them.

"*Third.* Did Mr. Quinan have notice that the Stith debt or "note had been assigned to and transferred to B. R. Townsend, "before he bought or procured the said claims or offsets?

"In determining the questions submitted to you, I instruct "you that in this character of case Mr. Quinan invokes the "equitable powers of the court to relieve him from some sup- "posed injury, and it devolves upon him to conceal nothing in "explaining how, and when, and from whom, and for what "amount, he got the possession of the claims, so that the court "could ascertain and determine how much he will be injured "if he fails to get the offsets allowed, or how much in good "conscience ought to be set off against the amount of the judg- "ment."

The court instructed the jury "to find whether the plaintiff, "George Quinan, was the real owner of the claims which he "sets up against the judgment of M. W. Townsend against M. "S. Stith; and if so, whether he became the owner of said

" claims before he had notice of the transfer of said judgment " to B. R. Townsend, executor of N. Townsend, deceased. If " the jury should so find, the plaintiff will be entitled to a judg- " ment for the amount of such claims, in payment *pro tanto* " of the judgment of M. W. Townsend against M. S. Stith."

The jury returned the following verdict : " We, the jury, " find for the plaintiff an offset against the judgment of the " two notes and the account, with interest." This is a general verdict, and found for the plaintiff all the material allegations which were well pleaded; but it is singularly irresponsive to the real issues in the case. It was error in the court to enter the judgment on this verdict : a new trial should have been granted.

It was also error to quash the execution upon the ground that it was not made to appear to the court that the death of Stith had been suggested, or an affidavit filed. The presumption of law was in favor of the legality and regularity of the execu- tion. It was only impeached by an averment in the petition, and it was incumbent upon the plaintiff to prove his averment after the answers were filed, which he did not do.

It must be observed in this case that the equities in this bill were denied, and it devolved on the plaintiff to aver, and prove even, something more than that M. W. Townsend was in " fail- " ing circumstances "—that he had " acquired " the claims which he sought to offset ; he should have averred and proved the ab- solute insolvency of Townsend ; that he had not merely ac- quired, but that he had bought and paid for the claims ; and when, precisely, he had purchased the claims, and that he had so purchased them without notice of the assignment to B. R. Townsend of the Stith judgment—otherwise, the bill presented no ground upon which a court of equity could properly arrest the execution.

But suppose the Stith judgment was assigned on the 15th day of July, 1866, by M. W. Townsend to B. R. Townsend, in good faith and for a valuable consideration. Then, the claims " acquired " by Quinan two years after the assignment had vested all right and title in law and equity to the judgment in

B. R. Townsend, could not be made an offset against this judgment, even without notice to Quinan of the transfer at the time he "acquired" the claims. The counsel appear to have argued this case upon the theory that the offset would be allowed under the circumstances. Such is not the law. The Stith judgment was not affirmed by the Supreme Court, until the 30th of March, 1864, at which time, as this court is bound to notice, the laws in force in the State of Texas forbid the issuance of execution on judgments at law; and these laws were in force on the 20th of December, 1864, at the date of Stith's death, and remained in force until the 8th day of September, 1865, when the provisional governor, the Hon. A. J. Hamilton, forbade the issuance of executions on judgments at law, by public proclamation; and it was not until the 20th day of August, 1866, that the President of the United States declared the rebellion suppressed. (See Sayles's Treatise, 851 and 853.)

It further appears that this judgment was presented for allowance, and was allowed by Floyd, and approved by the court in the month of April, 1867. These facts being considered, neither was M. W. nor B. R. Townsend chargeable with laches. It is true, the stay laws alluded to in this opinion have since been declared unconstitutional by this court; but we have not, nor will we allow any citizen to be prejudiced in his rights, by reason of his obedience to those laws whilst they were supposed to be valid and binding.

We are of opinion that the court erred in overruling the motion filed on the 1st day of December, 1868, to dissolve the injunction. The bill did not disclose such equities as entitled the petitioner to the relief sought. If he did buy, and pay an honest consideration for the claims which he has been permitted to offset against this judgment, the same money which he paid for them would have paid just so much of the judgment against him, and he knew of the judgment when he claims to have purchased the claims. The judgment of the District Court is reversed, and the cause remanded.

Reversed and remanded.